# EXHIBIT 1



**U.S. Department of Justice**

*Michael K. Loucks*
*Acting United States Attorney*
*District of Massachusetts*

---

*Main Reception: (617) 748-3100*

*John Joseph Moakley United States Courthouse*
*1 Courthouse Way*
*Suite 9200*
*Boston, Massachusetts 02210*

August 31, 2009

Brien T. O'Connor
Ropes & Gray LLP
One International Place
Boston, MA 02110

Re:     **Side Letter Agreement with Pfizer Inc**

Dear Mr. O'Connor:

This letter ("Side Letter Agreement") will confirm that, in exchange for full performance of the Plea Agreement entered into by and among the United States of America, acting through the Acting United States Attorney for the District of Massachusetts ("U.S. Attorney") and the Department of Justice (collectively referred to as "the United States") and your client, Pharmacia & Upjohn Company, Inc. ("Pharmacia"), a copy of which plea agreement is attached hereto as Exhibit 1, and in exchange for certain other promises made herein between and among the United States and your client, Pfizer Inc (Pfizer Inc and its subsidiaries collectively will be referred to as "Pfizer"), the United States and Pfizer hereby agree as follows:

1.      No Criminal Prosecution of Pfizer Inc

The United States hereby declines prosecution of Pfizer Inc or any of its subsidiaries (other than Pharmacia & Upjohn Company, Inc. as set forth in the Information) for conduct by or attributable to Pfizer Inc or any of its subsidiaries that:

(a)     falls within the scope of the Information to which Pharmacia & Upjohn Company, Inc. is pleading guilty; or

(b)     was a subject of the Pfizer investigation by the grand jury; or

(c)     was otherwise known to the U.S. Attorney prior to January 23, 2009 in connection with allegations that Pfizer:

August 31, 2009
Page 2

    (1)    promoted, marketed and sold the drugs Bextra, Geodon, Lyrica, or Zyvox for unapproved uses and dosages or with unapproved claims, or directly or indirectly offered or paid remuneration to third parties to induce them to recommend, prescribe and/or purchase Bextra, Geodon, Lyrica or Zyvox; or

    (2)    at any time prior to January 1, 2005, directly or indirectly offered or paid remuneration to third parties to induce them to recommend, prescribe and/or purchase Aricept, Relpax, Celebrex, Zoloft, Lipitor, Norvasc, Viagra, Zithromax and Zyrtec; or,

    (3)    at any time between January 1, 2005 and January 23, 2009, directly or indirectly offered or paid remuneration to third parties to induce them to recommend, prescribe and/or purchase the drugs referenced in subparagraph (c)(2) above, about which the U.S. Attorney was on actual notice (meaning more than the mere existence of a document or documents in the U.S. Attorney's files) on January 23, 2009; or,

    (d)    for conduct occurring prior to January 23, 2009 relating to the United States Attorney's Office's investigation of Zyvox.

The United States does not decline criminal prosecution of Pfizer Inc or any of Pfizer's related entities for any other conduct beyond that set forth above.

This Side Letter Agreement is not intended to and does not affect the criminal liability of any individual.

It is understood among the parties to this Side Letter Agreement that the United States' promise not to prosecute Pfizer Inc is dependent upon and subject to Pharmacia & Upjohn Company, Inc. fulfilling its material obligations in the Plea Agreement and Pfizer Inc fulfilling its obligations herein and in the related Civil Settlement Agreement attached hereto as Exhibit 2. If Pharmacia & Upjohn Company, Inc. does not fulfill its material obligations in the Plea Agreement and/or Pfizer Inc does not fulfill its obligations herein and in the related Civil Settlement Agreement, Pfizer Inc agrees to waive any defenses regarding pre-indictment delay, statute of limitations, or Speedy Trial Act with respect to any and all criminal charges that could have been timely brought or pursued as of the date of this letter, as set forth above.

    2.    <u>Cooperation of Pfizer Inc</u>

Pfizer shall cooperate completely and truthfully in any trial or other proceeding arising out of any ongoing civil, criminal or administrative investigation of its current and former officers, agents, and employees and customers in connection with matters described in Paragraph

August 31, 2009
Page 3

One. Pfizer shall make reasonable efforts to facilitate access to, and to encourage the cooperation of, its current and former officers, agents, and employees for interviews sought by law enforcement agents, upon request and reasonable notice in connection with the matters described in Paragraph One. Pfizer shall also take reasonable measures to encourage its current and former officers, agents, and employees to testify truthfully and completely before any grand jury, and at any trial or other hearing, at which they are requested to do so by any government entity in connection with matters described in Paragraph One.

Pfizer Inc also agrees to send a corrective letter, subject to the approval of the United States Attorney's Office for the District of Massachusetts and the Food and Drug Administration, that corrects the misstatements and unsubstantiated statements made during the promotion and marketing of Zyvox regarding the superiority of Zyvox.

In addition, Pfizer shall, in connection with matters described in Paragraph One, promptly furnish to law enforcement agents, upon request, all documents and records in its possession, custody or control relating to the conduct that are within the scope of any ongoing federal investigation, trial or other criminal proceeding, and that are not covered by the attorney-client privilege or work product doctrine.

Provided, however, notwithstanding any provision of this Agreement, that: (1) Pfizer is not required to request of its current or former officers, agents, or employees that they forego seeking the advice of an attorney or that they act contrary to that advice; (2) Pfizer is not required to take any action against its officers, agents, or employees for following their attorney's advice; and (3) Pfizer is not required to waive any privilege or claim of work product protection.

Pfizer Inc acknowledges that Pharmacia & Upjohn Company, Inc. expressly and unequivocally admits that it knowingly, intentionally and willfully committed the crime charged in the Information and is in fact guilty of that offense. Pfizer Inc agrees that it will not make statements inconsistent with this explicit admission of guilt by Pharmacia & Upjohn Company to the crime charged in the Information.

3.    Who Is Bound By Agreement

This Side Letter Agreement is binding among Pfizer and the Office of the United States Attorney for the District of Massachusetts, the United States Attorney's Offices for each of the other 93 judicial districts of the United States, and the Office of Consumer Litigation of the Department of Justice. The non-prosecution provisions in Paragraph 1 are also binding on the Criminal Division of the United States Department of Justice, with the exception of the investigation of Pfizer being conducted by the Fraud Section of the Criminal Division regarding possible violations of the Foreign Corrupt Practices Act and related offenses in connection with the sales and marketing of Pfizer's products to foreign customers, which investigation is specifically excluded from the release in Paragraph 1. A copy of the letter to Acting United

August 31, 2009
Page 4

States Attorney Michael K. Loucks from the Deputy Assistant Attorney General, Criminal
Division, U.S. Department of Justice, authorizing this Agreement is attached hereto as Exhibit 3.
Pfizer understands that this Agreement does not bind any state or local prosecutorial authorities,
the Tax Division of the U.S. Department of Justice, or the Internal Revenue Service of the U.S.
Department of the Treasury.   Settlement agreements between Pfizer and the various states are
not covered by the terms of this Side Letter Agreement.

4.      Complete Agreement

This Side Letter Agreement, the Plea Agreement with Pharmacia & Upjohn Company,
Inc., the Civil Settlement Agreement, the Corporate Integrity Agreement and the Tolling
Agreement between Pfizer Inc and the United States Attorney dated December 13, 2008 are the
complete and only agreements between the parties.  No promises, agreements or conditions have
been entered into other than those set forth or referred to in the above-identified documents.  This
agreement supersedes prior understandings, if any, of the parties, whether written or oral.  This
agreement cannot be modified other than in a written memorandum signed by the parties or on
the record in court.

If this letter accurately reflects the agreement entered into between the United States and
Pfizer Inc and its Board of Directors has authorized you to enter into this agreement, please sign
below and return the original of this letter to Assistant U.S. Attorney Sara M. Bloom or Susan M.
Poswistilo.

Very truly yours,

MICHAEL K. LOUCKS
Acting United States Attorney
District of Massachusetts

SARA M. BLOOM
Assistant U.S. Attorney

SUSAN M. POSWISTILO
Assistant U.S. Attorney
District of Massachusetts

August 31, 2009
Page 5

<u>ACKNOWLEDGMENT OF AGREEMENT</u>

The Board of Directors of Pfizer Inc has authorized me to enter into this global criminal
and civil resolution as set forth in this Side Letter Agreement, the Civil Settlement Agreement,
the Plea Agreement with Pharmacia & Upjohn Company, Inc., the criminal Information charging
Pharmacia & Upjohn Company, Inc., and the Corporate Integrity Agreement.  The Board of
Directors has been advised of the civil and criminal components of this resolution and its
attendant implications, including the imposition of a new Corporate Integrity Agreement.  The
Board of Directors has had a full opportunity to discuss the nature of this resolution with me and
Pfizer's Chief Compliance Officer.  I am authorized to acknowledge on behalf of Pfizer Inc that
this Side Letter Agreement, the Civil Settlement Agreement, the Plea Agreement with Pharmacia
& Upjohn Company, Inc., the criminal Information charging Pharmacia & Upjohn Company,
Inc., and the Corporate Integrity Agreement fully set forth the agreements made between Pfizer
Inc and the United States, and that no additional promises or representations have been made to
Pfizer Inc by any officials of the United States in connection with the disposition of this matter,
other than those set forth in those documents.

Dated:

Amy Schulman
Sr. Vice President and General Counsel

Dated:  8|31|09

BRIEN T. O'CONNOR
Ropes & Gray LLP
Counsel for Pfizer Inc



**U.S. Department of Justice**

*Michael K. Loucks*
*Acting United States Attorney*
*District of Massachusetts*

---

*Main Reception: (617) 748-3100*

*John Joseph Moakley United States Courthouse*
*Suite 9200*
*1 Courthouse Way*
*Boston, Massachusetts 02210*

August 31, 2009

Brien T. O'Connor
Ropes & Gray LLP
One International Place
Boston, MA 02110

> Re:   United States v. Pharmacia & Upjohn Company, Inc.

Dear Mr. O'Connor:

This letter sets forth the Agreement between the United States Attorney for the District of Massachusetts ("the U.S. Attorney") and the United States Department of Justice (collectively, the United States Attorney and the United States Department of Justice will be referred to as the "United States") and your client, Pharmacia & Upjohn Company, Inc. (hereinafter "Pharmacia"), in the above-captioned case. The Agreement is as follows:

1.   Change of Plea

At the earliest practicable date, Pharmacia shall waive indictment and plead guilty to the one-count Information attached hereto as Exhibit A, charging Pharmacia with a violation of the Food, Drug and Cosmetic Act, Title 21, U.S.C. Sections 331(a), 333(a)(2) and 352(f)(1). Pharmacia expressly and unequivocally admits that it knowingly, intentionally and willfully committed the crime charged in the attached Information and is in fact guilty of the offense, and agrees that it will not make any statements inconsistent with this explicit admission. Pharmacia agrees to waive venue, any applicable statutes of limitations, and any legal or procedural defects in the Information.

2.   Penalties

Pharmacia faces the following maximum penalties on the count of conviction:

(1)   a maximum possible fine of $500,000, twice the gross gain derived from the offense, or twice the gross loss to a person other than Pharmacia, whichever is greatest. *See* 18 U.S.C. §§ 3571(c), (d). The gross gain resulting from the offense

<u>EXHIBIT 1</u>

is $664,000,000 and thus the maximum possible fine is $1,328,000,000.

(2)     a term of probation of not less than one (1) year and not more than five (5) years. *See* 18 U.S.C. § 3561(c)(1).

(3)     a special assessment in the amount of $400. *See* 18 U.S.C. § 3013(a)(2)(B).

3.     Sentencing Guidelines

The parties agree to take the following positions at sentencing under the United States Sentencing Guidelines:

  a.     The parties agree that the Guideline Manual in effect as of the date of sentencing should be used in determining Pharmacia's sentence. *See* U.S.S.G. § 1B1.11(a);

  b.     The parties agree that the base fine is $664,000,000, which is the pecuniary gain to the organization from the offense. *See* U.S.S.G. §§ 8C2.3 and 8C2.4(a);

  c.     Pursuant to U.S.S.G. § 8C2.5, the culpability score is eight (8) determined as follows:

    (1)     Base culpability score is five (5) pursuant to U.S.S.G. § 8C2.5(a);

    (2)     Add five (5) points pursuant to U.S.S.G. § 8C2.5(b)(1)(A), in that the organization had 5,000 or more employees, and an individual within the high-level personnel of the unit participated in or condoned the offense and/or tolerance of the offense by substantial authority personnel was pervasive throughout the organization;

    (3)     Deduct two (2) points for Pharmacia's full cooperation pursuant to U.S.S.G. § 8C2.5(g)(2).

d.     Pursuant to U.S.S.G. § 8C2.6, the appropriate multiplier range associated with a culpability score of eight (8) is 1.6 to 3.2;

e.     Thus, the Guideline Fine Range is $1,062,400,000 to $1,328,000,000. *See* U.S.S.G. §§ 8C2.7(a), (b); 18 U.S.C. §§ 3571(c) and (d); and,

f.     The parties agree that (1) disgorgement pursuant to U.S.S.G. § 8C2.9 is not necessary, (2) there is no basis for a downward departure or deviation under the

2

—

United States Sentencing Guidelines and (3) a fine within the guideline range will result in a reasonable sentence taking into consideration all of the factors set forth in 18 U.S.C. §§ 3553(a), 3572.

4.    Agreed Disposition

The United States and Pharmacia agree pursuant to Fed. R. Crim. P. 11(c)(1)(C) that the following sentence is the appropriate disposition of the Information:

    a.    a criminal fine in the amount of one billion one hundred ninety-five million dollars ($1,195,000,000) to be paid within one week of the date of sentencing;

    b.    a mandatory special assessment of $400 pursuant to 18 U.S.C. § 3013, which shall be paid to the Clerk of Court on or before the date of sentencing; and

    c.    criminal forfeiture in the amount of $105,000,000;

    d.    In light of the pending civil action, *United States ex rel. Kopchinski v Pfizer, et. al.,* C.A. No. 05-CV-12115 (D. Mass.) (the "Civil Action"), and the Civil Settlement Agreement between Pfizer Inc and the United States relating to the Civil Action which is being signed contemporaneously with this plea agreement, and attached hereto as Exhibit B, which requires the payment of $1,000,000,000, plus interest, and in light of the October 17, 2008 agreements in principle reached by Pfizer Inc resolving substantially all personal injury and class action cases alleging that Pfizer's pain medication Bextra was the cause of injury, it appears that a process is in place under which all identifiable victims will have the opportunity to be fully recompensed. The private payor victims will have been recompensed from the agreements in principle reached by Pfizer Inc with the personal injury plaintiffs, and the loss suffered by the federal program victims will be recompensed through the Federal Settlement Amount as defined in the Civil Settlement Agreement. Therefore, the United States agrees that it will not seek a separate restitution order as to Pharmacia as part of the resolution of the Information and the parties agree that the appropriate disposition of this case does not include a restitution order. The parties further agree that any attempt to further effect restitution would unduly complicate and prolong the sentencing to the degree that the benefit to any further victims would outweigh the burden on the sentencing process under 18 U.S.C. § 3663(a)(1)(B)(ii).

The United States specifically may, at its sole option, be released from its commitments under this Agreement, including, but not limited to, its agreement that this paragraph constitutes the appropriate disposition of this case, if at any time between its execution of this Agreement and sentencing, Pharmacia:

3

(a)     Fails to admit a complete factual basis for the plea;

(b)     Fails to truthfully admit its conduct in the offense of conviction;

(c)     Falsely denies, or frivolously contests, relevant conduct for which Pharmacia is accountable under U.S.S.G. § 1B1.3;

(d)     Gives false or misleading testimony in any proceeding relating to the criminal conduct charged in this case and any relevant conduct for which Pharmacia is accountable under U.S.S.G. § 1B1.3;

(e)     Engages in acts which form a basis for finding that Pharmacia has obstructed or impeded the administration of justice under U.S.S.G. § 3C1.1;

(f)     Attempts to withdraw its plea.

Pharmacia expressly understands that it may not withdraw its plea of guilty, unless the Court rejects this Agreement under Fed. R. Crim. P. 11(c)(5).

5.     <u>No Further Prosecution of Pharmacia</u>

Pursuant to Fed. R. Crim. P. 11(c)(1)(A), the United States agrees that, other than the charges in the attached Information, it shall not further prosecute Pharmacia for conduct relating to the drug Bextra which (a) falls within the scope of the Information; (b) was a subject of the investigation by the grand jury; or (c) was known to the U.S. Attorney prior to January 23, 2009. This declination is expressly contingent on:

(1)     the guilty plea of Pharmacia being accepted by the Court and not withdrawn; and

(2)     Pharmacia's performance of all of its material obligations as set forth in this Agreement and Pfizer's performance of all of its material obligations set forth in the attached Civil Settlement Agreement. If Pharmacia's guilty plea is not accepted by the Court or is withdrawn for any reason, or if Pharmacia should fail to perform a material obligation under this Agreement, or if Pfizer should fail to perform a material obligation under the Civil Settlement Agreement, this declination of prosecution shall be null and void.

The United States expressly reserves the right to prosecute any individual, including but not limited to present and former officers, directors, employees, and agents of Pharmacia, in connection with the conduct encompassed by this plea agreement, within the scope of the grand jury investigation, or known to the U.S. Attorney.

4

6.    Payment of Mandatory Special Assessment

Pharmacia agrees to pay the mandatory special assessment to the Clerk of the Court on or before the date of sentencing.

7.    Waiver of Rights to Appeal and to Bring Collateral Challenge

Pharmacia is aware that it has the right to challenge its sentence and guilty plea on direct appeal. Pharmacia is also aware that it may, in some circumstances, be able to argue that its plea should be set aside, or its sentence set aside or reduced, in a collateral challenge such as pursuant to a motion under 28 U.S.C. § 2255.

In consideration of the concessions made by the United States in this Agreement, Pharmacia knowingly and voluntarily waives its right to appeal or collaterally challenge:

      (a)    Pharmacia's guilty plea and any other aspect of Pharmacia's conviction, including, but not limited to, any rulings on pretrial suppression motions or any other pretrial dispositions of motions and issues; and

      (b)    The imposition by the District Court of the sentence agreed to by the parties, as set out in paragraph 4, even if the Court rejects one or more positions advocated by the parties with regard to the application of the U.S. Sentencing Guidelines.

Pharmacia's waiver of rights to appeal and to bring collateral challenges shall not apply to appeals or challenges based on new legal principles in First Circuit or Supreme Court cases decided after the date of this Agreement which are held by the First Circuit or Supreme Court to have retroactive effect.

This Agreement does not affect the rights or obligations of the United States as set forth in 18 U.S.C. § 3742(b), and the U.S. Attorney therefore retains his appeal rights.

8.    Fed. R. Crim. P. 11(c)(1)(C) Agreement

Pharmacia's plea will be tendered pursuant to Fed. R. Crim. P. 11(c)(1)(C). Pharmacia cannot withdraw its plea of guilty unless the sentencing judge rejects this Agreement or fails to impose a sentence consistent herewith. If the sentencing judge rejects this Agreement or fails to impose a sentence consistent herewith, this Agreement shall be null and void at the option of either the United States or Pharmacia.

Pharmacia may seek sentencing by the Court immediately following the Rule 11 plea hearing. The United States does not object to the Court sentencing Pharmacia immediately following the Rule 11 plea hearing or prior to the completion of a Presentence Report. Pharmacia understands that the decision whether to proceed immediately following the plea

hearing with the sentencing proceeding, and to do so without a Presentence Report, is exclusively that of the United States District Court.

9.    Cooperation

Pharmacia shall cooperate completely and truthfully in any trial or other proceeding arising out of any ongoing civil, criminal or administrative investigation of its current and former officers, agents, employees and customers in connection with matters described in the Information. Pharmacia shall make reasonable efforts to facilitate access to, and to encourage the cooperation of, its current and former officers, agents, and employees for interviews sought by law enforcement agents, upon request and reasonable notice in connection with matters described in the Information. Pharmacia shall also take reasonable measures to encourage its current and former officers, agents, and employees to testify truthfully and completely before any grand jury, and at any trial or other hearing, at which they are requested to do so by any government entity in connection with matters described in the Information.

In addition, Pharmacia shall promptly furnish to law enforcement agents, upon request, all documents and records in its possession, custody or control relating to the conduct that is within the scope of any such ongoing federal investigation, trial or other proceeding in connection with matters described in the Information, and that are not covered by the attorney-client privilege or work product doctrine.

Provided, however, notwithstanding any provision of this Agreement, that: (1) Pharmacia is not required to request of its current or former officers, agents, or employees that they forego seeking the advice of an attorney or that they act contrary to that advice; (2) Pharmacia is not required to take any action against its officers, agents, or employees for following their attorney's advice; and (3) Pharmacia is not required to waive any privilege or claim of work product protection.

10.    Probation Department Not Bound By Agreement

The sentencing disposition agreed upon by the parties and their respective calculations under the Sentencing Guidelines are not binding upon the United States Probation Office.

11.    Forfeiture

Pharmacia will forfeit to the United States assets subject to forfeiture pursuant to 21 U.S.C. § 334 and 28 U.S.C. § 2461(c) as a result of its guilty plea. Pharmacia admits that the value of the quantities of Bextra which were misbranded in violation of 21 U.S.C. § 331 totaled at least $105,000,000.00 in United States currency. Pharmacia acknowledges and agrees that the quantities of Bextra which were misbranded in violation of 21 U.S.C. § 331 cannot be located upon exercise of due diligence, or have been transferred or sold to, or deposited with, a third party, placed beyond the jurisdiction of the Court, substantially diminished in value, or commingled with other property which cannot be divided without difficulty. Accordingly,

6

Pharmacia agrees that the United States is entitled to forfeit as "substitute assets" any other assets of Pharmacia up to the value of the now missing directly forfeitable assets.

Pharmacia agrees that, no later than one week after sentencing, it shall remit the amount of $105,000,000 in United States currency to the United States Marshals Service pursuant to the wire instructions provided by the United States Attorney's Office.  Pharmacia and the United States agree that this payment shall satisfy any and all forfeiture obligations that Pharmacia may have as a result of its guilty plea.

Forfeiture of substitute assets shall not be deemed an alteration of Pharmacia's sentence. The forfeitures set forth herein shall not satisfy or offset any fine, restitution, cost of imprisonment, or other penalty imposed upon Pharmacia, nor shall the forfeitures be used to offset Pharmacia's tax liability or any other debt owed to the United States.

Pharmacia agrees to consent to the entry of orders of forfeiture for the $105,000,000.00 in United States currency, and waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, entry of a preliminary order of forfeiture, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.  Pharmacia acknowledges that it understands that the forfeiture of assets is part of the sentence that may be imposed in this case and waives any failure by the court to advise it of this, pursuant to Rule 11(b)(1)(J), at the time the guilty plea is accepted.

In addition to all other waivers or releases set forth in this Agreement, Pharmacia hereby waives any and all claims arising from or relating to the forfeitures set forth in this section, including, without limitation, any claims arising under the Double Jeopardy Clause of the Fifth Amendment, or the Excessive Fines Clause of the Eighth Amendment, to the United States Constitution, or any other provision of state or federal law.

The United States District Court for the District of Massachusetts shall retain jurisdiction to enforce the provisions of this section.

12.    Civil and Administrative Liability

By entering into this Agreement, the United States does not compromise any civil liability, including but not limited to any False Claims Act or tax liability, which Pharmacia may have incurred or may incur as a result of its conduct and its plea of guilty to the attached Information.

Pharmacia's civil liability to the United States in connection with certain matters under investigation by the United States is resolved in the Civil Settlement Agreement with Pfizer Inc, attached as Exhibit B, according to the terms set forth in that Agreement.

13.     Waiver of Defenses

If Pharmacia's guilty plea is not accepted by the Court for whatever reason, or is later withdrawn for whatever reason, Pharmacia hereby waives, and agrees it will not interpose, if charges are filed within six months of the date on which such guilty plea is rejected or withdrawn, any defense to any charges brought against it which it might otherwise have for pre-indictment delay, any statute of limitations, or the Speedy Trial Act, except any such defense that Pharmacia may have for conduct occurring prior to November 15, 2000.

14.     Breach of Agreement

If the United States determines that Pharmacia has failed to comply with any provision of this Agreement, or has committed any crime following its execution of this Agreement, the United States may, at its sole option, be released from its commitments under this Agreement in its entirety by notifying Pharmacia, through counsel or otherwise, in writing. The United States may also pursue all remedies available to it under the law, even if it elects not to be released from its commitments under this Agreement. Pharmacia recognizes that no such breach by it of an obligation under this Agreement shall give rise to grounds for withdrawal of its guilty plea. Pharmacia understands that, should it breach any provision of this agreement, the United States will have the right to use against Pharmacia before any grand jury, at any trial or hearing, or for sentencing purposes, any statements which may be made by it, and any information, materials, documents or objects which may be provided by it to the government subsequent to this Agreement, without any limitation.

Pharmacia understands and agrees that this 11(c)(1)(C) plea agreement and its agreed upon criminal disposition:

a.      are wholly dependent upon Pfizer's timely compliance with the material provisions of the attached Civil Settlement Agreement; and that

b.      failure by Pharmacia to comply fully with the material terms of this Agreement or by Pfizer to comply fully with the material terms of the attached Civil Settlement Agreement, including the payments required therein, will constitute a breach of this Agreement, provided however, that a breach of the Corporate Integrity Agreement (the "CIA"), referred to in the Civil Settlement Agreement, does not constitute a breach of this Plea Agreement, and any disputes arising under the CIA shall be resolved exclusively through the dispute resolution provisions of the CIA.

In the event Pharmacia at any time hereafter breaches any material provision of this Agreement, Pharmacia understands that (1) the United States will as of the date of that breach be relieved of any obligations it may have in this Agreement and the attached Civil Settlement Agreement, including but not limited to the promise not to further prosecute Pharmacia as set forth in paragraph 5 of this Agreement; and (2) Pharmacia will not be relieved of its obligation to make the payments set forth in this Agreement and Pfizer will not be relieved of its obligation to

8

make the payments set forth in the attached Civil Settlement Agreement, nor will it be entitled to return of any monies already paid. Moreover, in the event of a material breach, Pharmacia, with respect to any charges which could have been brought as of the date of this letter, and are brought within six months of the declaration of a breach, hereby waives, and agrees it will not interpose, any defense to any charges brought against it which it might otherwise have for pre-indictment delay, any statute of limitations, or the Speedy Trial Act, except any such defense that Pharmacia may already have for conduct occurring before November 15, 2000.

15.     Who Is Bound By Agreement

With respect to matters set forth in Paragraph 5, this Agreement is binding among Pharmacia and the Office of the United States Attorney for the District of Massachusetts, the United States Attorney's Offices for each of the other 93 judicial districts of the United States, and the Office of Consumer Litigation of the Department of Justice. The non-prosecution provisions in Paragraph 5 are also binding on the Criminal Division of the United States Department of Justice, with the exception of the investigation of Pharmacia being conducted by the Fraud Section of the Criminal Division regarding possible violations of the Foreign Corrupt Practices Act and related offenses in connection with the sales and marketing of Pharmacia's products to foreign customers, which investigation is specifically excluded from the release in Paragraph 5. A copy of the letter to Acting United States Attorney Michael K. Loucks from the Deputy Assistant Attorney General, Criminal Division, U.S. Department of Justice, authorizing this Agreement is attached as Exhibit C. Pharmacia understands that this Agreement does not bind any state or local prosecutorial authorities, the Tax Division of the U.S. Department of Justice, or the Internal Revenue Service of the U.S. Department of the Treasury.

16.     Corporate Authorization

Pharmacia's acknowledgment of this Agreement and execution of this Agreement on behalf of the corporation is attached as Exhibit D. Pharmacia shall provide to the U.S. Attorney and the Court a certified copy of a resolution of the Board of Directors of Pharmacia Corporation, affirming that the Board of Directors has authority to enter into the Plea Agreement and has (1) reviewed the Information in this case and the proposed Plea Agreement or has been advised of the contents thereof; (2) consulted with legal counsel in connection with the matter; (3) voted to enter into the proposed Plea Agreement; (4) voted to authorize Pharmacia to plead guilty to the charge specified in the Information; and (5) voted to authorize the corporate officer identified below to execute the Plea Agreement and all other documents necessary to carry out the provisions of the Plea Agreement. A copy of the resolution is attached as Exhibit E. Pharmacia agrees that either a duly authorized corporate officer or a duly authorized attorney for Pharmacia, at the discretion of the Court, shall appear on behalf of Pharmacia and enter the guilty plea and will also appear for the imposition of sentence.

17.     Complete Agreement

This Agreement, together with the Civil Settlement Agreement, set forth the complete and only agreement between the parties relating to the disposition of this matter. No promises,

9

representations or agreements have been made other than those set forth in this letter and its attachments A through E.  This Agreement supersedes prior understandings, if any, of the parties, whether written or oral.  This Agreement can be modified or supplemented only in a written memorandum signed by the parties or on the record in court.

If this letter accurately reflects the Agreement between the U.S. Attorney and your client, Pharmacia, please have the authorized representative of Pharmacia sign the Acknowledgment of Agreement below.  Please also sign below as Witness.  Return the original of this letter to Assistant U.S. Attorneys Sara M. Bloom and Susan M. Poswistilo.

Very truly yours,

MICHAEL K. LOUCKS
Acting United States Attorney

10

## ACKNOWLEDGMENT OF PLEA AGREEMENT

The Board of Directors has authorized me to execute this Plea Agreement on behalf of Pharmacia & Upjohn Company, Inc. The Board has read this Plea Agreement, the attached criminal Information, and the Civil Settlement Agreement including its attachment in their entirety, or has been advised of the contents thereof, and has discussed them fully in consultation with Pharmacia & Upjohn Company, Inc.'s attorneys. I am further authorized to acknowledge on behalf of Pharmacia & Upjohn Company, Inc. that these documents fully set forth Pharmacia & Upjohn Company, Inc.'s agreement with the United States, and that no additional promises or representations have been made to Pharmacia & Upjohn Company, Inc. by any officials of the United States in connection with the disposition of this matter, other than those set forth in these documents.

Dated: _Aug 28th, 2009_

_____
Vice President and Secretary
Pharmacia & Upjohn Company, Inc.

Dated:

_____
BRIEN T. O'CONNOR
Ropes & Gray LLP
Counsel for Pharmacia & Upjohn Company, Inc.

11

EXHIBIT D

## ACKNOWLEDGMENT OF PLEA AGREEMENT

The Board of Directors has authorized me to execute this Plea Agreement on behalf of Pharmacia & Upjohn Company, Inc. The Board has read this Plea Agreement, the attached criminal Information, and the Civil Settlement Agreement including its attachment in their entirety, or has been advised of the contents thereof, and has discussed them fully in consultation with Pharmacia & Upjohn Company, Inc.'s attorneys. I am further authorized to acknowledge on behalf of Pharmacia & Upjohn Company, Inc. that these documents fully set forth Pharmacia & Upjohn Company, Inc.'s agreement with the United States, and that no additional promises or representations have been made to Pharmacia & Upjohn Company, Inc. by any officials of the United States in connection with the disposition of this matter, other than those set forth in these documents.

Dated:

                           _____
                           James Gibney
                           Vice President and Secretary
                           Pharmacia & Upjohn Company, Inc.

Dated: 8/31/09

                           _____
                           BRIEN T. O'CONNOR
                           Ropes & Gray LLP
                           Counsel for Pharmacia & Upjohn Company, Inc.

11

# SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into by and among the United States of America, acting through the United States Department of Justice on behalf of the Office of Inspector General of the United States Department of Health and Human Services ("OIG-HHS"), the TRICARE Management Activity ("TMA"), and the United States Office of Personnel Management ("OPM") (collectively the "United States"), Relators identified in the cases listed in Paragraph B of the Preamble to this Agreement ("Relators"), and Pfizer Inc ("Pfizer"), through their authorized representatives.  Collectively, all of the above will be referred to as "the Parties."

## PREAMBLE

As a preamble to this Agreement, the Parties agree to the following:

A.    Pfizer is a Delaware corporation with its principal place of business in New York. At all relevant times, Pfizer developed, manufactured, distributed, marketed and sold pharmaceutical products in the United States, including drugs sold under the trade names of: Bextra, Geodon, Zyvox, Lyrica, Aricept, Celebrex, Lipitor, Norvasc, Relpax, Viagra, Zithromax, Zoloft, and Zyrtec (collectively the "Covered Drugs").

B.    The Relators listed herein have filed the following qui tam actions against Pfizer (collectively the "Civil Actions"):

(1)    United States et al. ex rel. Blair Collins v. Pfizer, Inc., Civ. No. 04-11780-DPW (D. Mass.);

(2)    United States et al. ex rel. John Kopchinski v. Pfizer, Inc. et al., Civ. No. 05-CV-12115 (D. Mass.);

EXHIBIT 2

    (3)    <u>United States ex rel. Dana Spencer v. Pfizer, Inc.</u>,
           Civ. No. 05-12326 (D. Mass.);

    (4)    <u>United States et al. ex rel. Glenn DeMott v. Pfizer</u>,
           Civ. No. 05-12040 (D. Mass.);

    (5)    <u>United States et al. ex rel. David Farber and Casey Schildhauer v. Pfizer</u>, Civ. No. 07-10304 (D. Mass.);

    (6)    <u>United States et al. ex rel. Ronald Rainero v. Pfizer</u>,
           Civ. No. 07-11728 (D. Mass.);

    (7)    <u>United States et al. ex rel. Mark Westlock v. Pfizer, Inc. et al.</u>, Civ. No. 08-11318 (D. Mass.);

    (8)    <u>United States ex rel. Robert A. Liter v. Pfizer</u>,
           Civ. No. 06-00176 (E.D. Ky.); and

    (9)    <u>United States et al. ex rel. Stefan Kruszewski v. Pfizer, Inc.</u>, Civ. No. 07-4106 (E.D. Pa.).

C.    On such date as may be determined by the Court, Pfizer subsidiary Pharmacia & Upjohn Company, Inc. ("Pharmacia") will enter a plea of guilty pursuant to Fed. R. Crim. P. 11(c)(1)(C) (the "Plea Agreement") to an Information to be filed in <u>United States of America v. Pharmacia & Upjohn Company, Inc.</u>, Criminal Action No. [to be assigned] (District of Massachusetts) (the "Criminal Action") that will allege a violation of Title 21, United States Code, Sections 331(a), and 333(a), namely, the introduction into interstate commerce of a misbranded drug, Bextra, in violation of the Food, Drug and Cosmetic Act ("FDCA").

D.    Pfizer has entered into or will be entering into separate settlement agreements, described in Paragraph 1(b) below (hereinafter referred to as the "Medicaid State Settlement Agreements") with certain states and the District of Columbia in settlement of the Covered

Conduct.  States with which Pfizer executes a Medicaid State Settlement Agreement in the form

to which Pfizer and the National Association of Medicaid Fraud Control Units ("NAMFCU")

Negotiating Team have agreed, or in a form otherwise agreed to by Pfizer and an individual

State, shall be defined as "Medicaid Participating States."

      E.    The United States alleges that Pfizer caused to be submitted claims for payment

for the Covered Drugs to the Medicaid Program, Title XIX of the Social Security Act, 42 U.S.C.

§§ 1396-1396v.  The United States further alleges that Pfizer caused claims for payment for the

Covered Drugs to be submitted to the TRICARE program, 10 U.S.C.  §§ 1071-1109; the Federal

Employees Health Benefits Program ("FEHBP"), 5 U.S.C. §§ 8901-8914; the Federal Employees

Compensation Act Program, 5 U.S.C. § 8101, et seq; and caused purchases of the Covered Drugs

by the Department of Veterans' Affairs ("DVA") and the Bureau of Prisons ("BOP")

(collectively, the "other Federal Health Care Programs").  The United States further alleges that

Pfizer caused certain claims for payment for certain of the Covered Drugs to be submitted to the

Medicare Program, Title XVIII of the Social Security Act, 42 U.S.C.  §§ 1395-1395hhh.

      F.    The United States contends that it and the Medicaid Participating States have

certain civil claims, as specified in Paragraph 2, below, against Pfizer for engaging in the

following conduct (hereinafter referred to as the "Covered Conduct"):

      (1)    **Bextra**:  During the period February 1, 2002, through April 30, 2005, Pfizer: (a) illegally promoted the sale and use of Bextra for a variety of conditions (including acute pain and various types of surgical pain) and at dosages other than those for which its use was approved by the Food and Drug Administration ("FDA") (i.e., "off-label" uses), in violation of the FDCA, 21 U.S.C. § 331, et seq., and which were not medically-accepted indications as defined by 42 U.S.C. § 1396r-8(k)(6) for which the United States and state

3

Medicaid programs provided coverage for Bextra; (b) offered and paid illegal remuneration to health care professionals to induce them to promote and prescribe Bextra, in violation of the Federal Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b); and (c) made and/or disseminated unsubstantiated and/or false representations or statements about the safety and efficacy of Bextra. As a result of the foregoing conduct, Pfizer knowingly caused false or fraudulent claims for Bextra to be submitted to, or caused purchases by, Medicaid and the other Federal Health Care Programs.

(2) **Geodon**: During the period from January 1, 2001, through December 31, 2007, Pfizer: (a) illegally promoted the sale and use of Geodon for a variety of off-label conditions (including depression, bipolar maintenance, mood disorder, anxiety, aggression, dementia, attention deficit hyperactivity disorder, obsessive compulsive disorder, autism and post-traumatic stress disorder), and for patients (including pediatric and adolescent patients) and dosages that were off-label, in violation of the FDCA, 21 U.S.C. § 331, et seq., and which were not medically-accepted indications as defined by 42 U.S.C. § 1396r-8(k)(6) for which the United States and state Medicaid programs provided coverage for Geodon; (b) offered and paid illegal remuneration to health care professionals to induce them to promote and prescribe Geodon, in violation of the Federal Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b); and (c) made and/or disseminated unsubstantiated and/or false representations or statements about the safety and efficacy of Geodon. As a result of the foregoing conduct, Pfizer knowingly caused false or fraudulent claims for Geodon to be submitted to, or caused purchases by, Medicaid, Medicare and the other Federal Health Care Programs.

(3) **Zyvox**: During the period January 1, 2001, through February 28, 2008, Pfizer: (a) illegally promoted the sale and use of Zyvox for a variety of off-label conditions (including infections caused by methicillin-resistant *Staphylococcus aureus* ("MRSA") generally, rather than only those types of MRSA infections for which Zyvox was FDA-approved), in violation of the FDCA, 21 U.S.C. § 331, et seq., and which were not medically-accepted indications as defined by 42 U.S.C. § 1396r-8(k)(6) for which the United States and state Medicaid programs provided coverage for Zyvox; (b) made and/or disseminated unsubstantiated and/or false representations or statements about the safety and efficacy of Zyvox (including that Zyvox was superior to vancomycin, its primary competitor drug for these indications); and (c) offered and paid illegal remuneration to health care professionals to induce them to promote and prescribe

4

Zyvox, in violation of the Federal Anti-Kickback Statute, 42 U.S.C. § 1320-7b(b). As a result of the foregoing conduct, Pfizer knowingly caused false or fraudulent claims for Zyvox to be submitted to, or caused purchases by, Medicaid, Medicare and the other Federal Health Care Programs.

(4)     **Lyrica**: During the period September 1, 2005, through October 31, 2008, Pfizer: (a) illegally promoted the sale and use of Lyrica for a variety of off-label conditions (including chronic pain, neuropathic pain, perioperative pain, and migraine), in violation of the FDCA, 21 U.S.C. § 331, et seq., and which were not medically-accepted indications as defined by 42 U.S.C. § 1396r-8(k)(6) for which the United States and state Medicaid programs provided coverage for Lyrica; (b) made and/or disseminated unsubstantiated and/or false representations or statements about the safety and efficacy of Lyrica, including claims that it was superior to Neurontin and its generic equivalent, gabapentin; and (c) offered and paid illegal remuneration to health care professionals to induce them to promote and prescribe Lyrica, in violation of the Federal Anti-Kickback Statute, 42 U.S.C. § 1320-7b(b). As a result of the foregoing conduct, Pfizer knowingly caused false or fraudulent claims for Lyrica to be submitted to, or caused purchases by, Medicaid, Medicare and the other Federal Health Care Programs.

(5)     **Kickbacks**: From January 2001, through December 2004, Pfizer paid illegal remuneration for speaker programs, mentorships, preceptorships, journal clubs, and gifts (including entertainment, cash, travel and meals) to health care professionals to induce them to promote and prescribe the drugs Aricept, Celebrex, Lipitor, Norvasc, Relpax, Viagra, Zithromax, Zoloft, and Zyrtec, in violation of the Federal Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b). As a result of the foregoing conduct, Pfizer caused false claims to be submitted to Medicaid and TRICARE.

G.     The United States also contends that it has certain administrative claims against Pfizer as specified in Paragraphs 4 through 6, below, for engaging in the Covered Conduct.

H.     This Agreement is made in compromise of disputed claims. This Agreement is not an admission of facts or liability by Pfizer, and Pfizer expressly denies the allegations of the United States and the Relators as set forth herein and in the Civil Actions and denies that it

5

engaged in any wrongful conduct in connection with the Covered Conduct except as to: 1) such admissions as Pharmacia makes in connection with any guilty plea and as provided herein; and 2) the facts set forth in Attachment A as to Zyvox. This Agreement is not a concession by the United States that its claims are not well-founded. Neither this Agreement, nor the performance of any obligation arising under it, including any payment, nor the fact of settlement is intended to be, or shall be understood as, an admission of liability or wrongdoing, or other expression reflecting on the merits of the dispute by Pfizer, except as set forth in this Paragraph.

      I.     To avoid the delay, expense, inconvenience and uncertainty of protracted litigation of these claims, the Parties mutually desire to reach a final settlement as set forth below.

## **TERMS AND CONDITIONS**

      NOW, THEREFORE, in reliance on the representations contained herein and in consideration of the mutual promises, covenants, and obligations in this Agreement, and for good and valuable consideration, receipt of which is hereby acknowledged, the Parties agree as follows:

      1.     Pfizer agrees to pay to the United States and the Medicaid Participating States, collectively, the sum of one billion dollars ($1,000,000,000), plus (a) interest at the rate of 3.75% per annum on $502,524,316 from May 15, 2008, and continuing until and including the day before payment is made under this Agreement and, (b) interest at the rate of rate of 2.125% per annum on the remaining $497,475,684 from January 23, 2009, and continuing until and including the day before payment is made (collectively, the "Settlement Amount"). The Settlement Amount shall constitute a debt immediately due and owing to the United States and

6

the Medicaid Participating States on the Effective Date of this Agreement.  This debt shall be

discharged by payments to the United States and the Medicaid Participating States, under the

following terms and conditions:

     (a)     Pfizer shall pay to the United States the sum of $668,514,830 plus accrued

interest ("Federal Settlement Amount").  The Federal Settlement Amount shall consist of:  (1)

$343,339,991, plus interest accrued on this amount at the rate of 3.75% per annum from May 15,

2008, continuing until and including the day before payment is made; and, (2) $325,174,839 plus

interest accrued on this amount at the rate of 2.125% per annum from January 23, 2009,

continuing until and including the day before payment is made.  The Federal Settlement Amount

shall be paid by electronic funds transfer pursuant to written instructions from the United States

no later than seven (7) business days after (i) this Agreement is fully executed by the Parties and

delivered to Pfizer's attorneys; or (ii) the Court accepts a Fed. R. Crim. P. 11(c)(1)(C) guilty plea

as described in Preamble Paragraph C in connection with the Criminal Action and imposes the

agreed upon sentence, whichever occurs later.

     (b)     Pfizer shall pay to the Medicaid Participating States the sum of $331,485,170,

plus accrued interest ("Medicaid State Settlement Amount"). The Medicaid State Settlement

Amount shall consist of:  (1) the sum of $159,184,326, plus interest accrued thereon at the rate

of 3.75% per annum from May 15, 2008, continuing until and including the day before payment

is made; and, (2) the remaining $172,300,844, plus interest accrued thereon from January 23,

2009, at the rate of 2.125% per annum until and including the day before payment is made.  The

Medicaid State Settlement Amount shall be paid no later than seven (7) business days after (i)

7

this Agreement is fully executed by the Parties and delivered to Pfizer's attorneys; or (ii) the

Court accepts a Fed. R. Crim. P. 11(c)(1)(C) guilty plea as described in Preamble Paragraph C in

connection with the Criminal Action and imposes the agreed upon sentence, whichever occurs

later. The Medicaid State Settlement Amount shall be paid by electronic funds transfer to an

interest bearing account pursuant to written instructions from the NAMFCU Negotiating Team

and under the terms and conditions of the Medicaid State Settlement Agreements that Pfizer will

enter into with the Medicaid Participating States.

     (c)     Contingent upon the United States receiving the Federal Settlement Amount from

Pfizer, the United States agrees to pay, as soon as feasible after receipt, the following Relators

the following amounts plus their proportionate share of the interest accrued on the Federal

Settlement Amount described in (a) above as Relators' share of the proceeds pursuant to 31

U.S.C. §3730(d):

     (1)     John Kopchinski: $51,500,999

     (2)     Dana Spencer: $2,743,637

     (3)     Blair Collins: $2,354,582

     (4)     Glenn DeMott: $7,431,505

     (5)     Stefan Kruszewski: $29,013,420

     (6)     Ronald Rainero: $9,321,369

No other relator payments shall be made by the United States with respect to the matters covered

by this Agreement. All Relators in the Civil Actions listed in Preamble Paragraph B, above,

represent that they will abide by the terms of any written and executed separate agreements that

8

they may have entered into with one or more of the other Relators concerning the allocation of the Relators' share among themselves.

(d)     If Pharmacia's agreed-upon guilty plea pursuant to Fed. R. Crim. P. 11(c)(1)(C) in the Criminal Action described in Preamble Paragraph C is not accepted by the Court or the Court does not impose the agreed-upon sentence for whatever reason, this Agreement shall be null and void at the option of either the United States or Pfizer. If either the United States or Pfizer exercises this option, which option shall be exercised by notifying all Parties, through counsel, in writing within five (5) business days of the Court's decision, the Parties will not object and this Agreement will be rescinded. If this Agreement is rescinded, Pfizer will not plead, argue or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel or similar theories, to any civil or administrative claims, actions or proceedings arising from the Covered Conduct that are brought by the United States within 90 calendar days of rescission, except to the extent such defenses were available on the day on which the qui tam complaints listed in Preamble Paragraph B, above, were filed.

2.     Subject to the exceptions in Paragraph 7 below (concerning excluded claims), in consideration of the obligations of Pfizer set forth in this Agreement, conditioned upon Pfizer's payment in full of the Settlement Amount, the United States (on behalf of itself, its officers, agencies, and departments) agrees to release Pfizer, its predecessors, and its current and former divisions, parents, subsidiaries, successors and assigns and their current and former directors, officers, and employees from any civil or administrative monetary claim that the United States has or may have for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733;

9

the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; the Civil Monetary Penalties

Law, 42 U.S.C. § 1320a-7a; any statutory provision creating a cause of action for civil damages

or civil penalties for which the Civil Division of the Department of Justice has actual and present

authority to assert and compromise pursuant to 28 C.F.R. Part O, Subpart I, 0.45(d) and common

law claims for fraud, payment by mistake, breach of contract, disgorgement and unjust

enrichment.

      3.      Subject to the exceptions in Paragraph 7 (concerning excluded claims), below, in

consideration of the obligations of Pfizer in this Agreement, conditioned upon Pfizer's full

payment of the Settlement Amount, Relators, for themselves and for their heirs, successors,

attorneys, agents, and assigns, agree to release Pfizer and its predecessors, and its current and

former divisions, parents, subsidiaries, successors and assigns and their current and former

directors, officers, and employees from any civil monetary claim the United States has or may

have under the False Claims Act, 31 U.S.C. §§ 3729-3733, for the Covered Conduct; provided,

however, that Relators do not release Pfizer for any claims under 31 U.S.C. §§ 3730(d) and (h),

nor from any other claims that Relators have or may have, whether asserted in their Civil

Actions or not asserted therein.

      4.      In consideration of the obligations of Pfizer set forth in this Agreement and the

Corporate Integrity Agreement ("CIA") entered into between OIG-HHS and Pfizer, conditioned

upon Pfizer's full payment of the Settlement Amount, OIG-HHS agrees to release and refrain

from instituting, directing, or maintaining any administrative action seeking exclusion from the

Medicare, Medicaid and other Federal health care programs (as defined in 42 U.S.C. § 1320a-

7b(f)) against Pfizer under 42 U.S.C. § 1320a-7a (Civil Monetary Penalties Law) or 42 U.S.C. §

1320a-7(b)(7) (permissive exclusion for fraud, kickbacks, and other prohibited activities) for the

Covered Conduct, except as reserved in Paragraph 7 (concerning excluded claims), below, and

as reserved in this Paragraph. The OIG-HHS expressly reserves all rights to comply with any

statutory obligations to exclude Pfizer from the Medicare, Medicaid and other Federal health

care programs under 42 U.S.C. § 1320a-7(a) (mandatory exclusion) based upon the Covered

Conduct. Nothing in this Paragraph precludes the OIG-HHS from taking action against entities

or persons, or for conduct and practices, for which claims have been reserved in Paragraph 7,

below.

     5.     In consideration of the obligations of Pfizer set forth in this Agreement and,

conditioned upon Pfizer's payment in full of the Settlement Amount, TMA agrees to release and

refrain from instituting, directing, or maintaining any administrative action seeking exclusion

from the TRICARE Program against Pfizer, under 32 C.F.R. § 199.9 for the Covered Conduct,

except as reserved in Paragraph 7 below (concerning excluded claims), and as reserved in this

Paragraph. TMA expressly reserves authority to exclude Pfizer under 32 C.F.R. §§

199.9(f)(1)(i)(A), (f)(1)(i)(B), and (f)(1)(iii), based upon the Covered Conduct. Nothing in this

Paragraph precludes TMA or the TRICARE Program from taking action against entities or

persons, or for conduct and practices, for which claims have been reserved in Paragraph 7,

below.

     6.     In consideration of the obligations of Pfizer set forth in this Agreement and

conditioned upon Pfizer's full payment of the Settlement Amount, OPM agrees to release and

11

refrain from instituting, directing, or maintaining any administrative action against Pfizer under

5 U.S.C. § 8902a or 5 C.F.R. Part 970 for the Covered Conduct, except as reserved in Paragraph

7 below (concerning excluded claims), except if required by 5 U.S.C. § 8902a(b).  Nothing in

this Paragraph precludes OPM from taking action against entities or persons, or for conduct and

practices, for which claims have been reserved in Paragraph 7 below.

       7.      Notwithstanding any term of this Agreement, specifically reserved and excluded

from the scope and terms of this Agreement as to any entity or person (including Pfizer and the

Relators) are the following claims of the United States:

         (a)      Any civil, criminal, or administrative liability arising under Title 26, U.S. Code (Internal Revenue Code);

         (b)      Any criminal liability;

         (c)      Except as explicitly stated in this Agreement, any administrative liability, including mandatory exclusion from Federal health care programs;

         (d)      Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

         (e)      Any liability based upon such obligations as are created by this Agreement;

         (f)      Any liability for express or implied warranty claims or other claims for defective or deficient products and services, including quality of goods and services;

(g)    Any liability for personal injury or property damage or for other consequential damages arising from the Covered Conduct;

(h)    Any liability for failure to deliver items or services due; or

(i)    Any liability of individuals (including current or former directors, officers, employees, or agents of Pfizer) who receive written notification that they are the target of a criminal investigation, are criminally indicted or charged, or are convicted, or who enter into a criminal plea agreement.

8.    Each Relator, and his/her respective heirs, successors, attorneys, agents, and assigns agree not to object to this Agreement and agree and confirm that this Agreement and the allocation of amounts to their respective claims as set forth in Paragraph 12 are fair, adequate and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B), and expressly waive the opportunity for a hearing on any objection to this Agreement pursuant to 31 U.S.C. § 3730(c)(2)(B). Conditioned upon payment by the United States of the amounts set forth in Paragraph 1(c), above, Relators for themselves individually, and for their heirs, successors, agents, and assigns, fully and finally release, waive, and forever discharge the United States, its officers, agents, and employees, from any claims arising from or related to 31 U.S.C. § 3730 for any claims arising from the Covered Conduct and/or for any claims in the Civil Actions; and from any other claims for a share of the Settlement Amount, and in full settlement of any claims Relators may have against the United States under this Agreement. This Agreement does not resolve or in any manner affect any claims the United States has or may have against the

13

Relators arising under Title 26, U.S. Code (Internal Revenue Code), or any claims arising under this Agreement.

9.      Conditioned upon the United States' receipt of the payments described in Paragraph 1(a), above, Relators, for themselves, and for their respective heirs, successors, attorneys, agents, and assigns, agree to release Pfizer, its predecessors, subsidiaries, successors and assigns and its current and former directors, officers, agents, and employees, from any liability to Relators arising from the allegations in Relators' Civil Actions that are being resolved pursuant to this Agreement by payment by Pfizer of the Federal Settlement Amount for the Covered Conduct. Relators' release of Pfizer does not extend to allegations in their Civil Actions that are not within the Covered Conduct, including Relators' claims for reasonable attorneys' fees, expenses and costs pursuant to 31 U.S.C. § 3730(d), Relators' claims under 31 U.S.C. § 3730(h), Relators claims for a Relator's Share under the Medicaid State Settlement Agreements, nor to any other claims Relators may have or had against Pifzer that are not expressly resolved herein.

10.     Pfizer waives and shall not assert any defenses it may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action. Nothing in this paragraph or any other provision of this Agreement constitutes an agreement by

14

the United States concerning the characterization of the Settlement Amount for purposes of the Internal Revenue laws, Title 26 of the United States Code.

11.     Pfizer fully and finally releases the United States, its agencies, employees, servants, and agents from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) which Pfizer has asserted, could have asserted, or may assert in the future against the United States, its agencies, employees, servants, and agents, related to the Covered Conduct or arising from the United States' investigation and prosecution of the Civil Actions and the Criminal Action.

12.     Should this Agreement be challenged by any person as not fair, adequate or reasonable pursuant to 31 U.S.C. § 3730(c)(2)(B), Pfizer agrees that it will take all reasonable and necessary steps to defend this Agreement. Pfizer and the United States agree that the following allocation of the Settlement Amount to the Covered Conduct identified in Preamble Paragraph (F) is fair, adequate and reasonable under the circumstances:

> (1)    For the Covered Conduct referenced in Preamble paragraph F(1) regarding Bextra: $502,524,316;
>
> (2)    For the Covered Conduct referenced in Preamble paragraph F(2) regarding Geodon: $301,462,065;
>
> (3)    For the Covered Conduct referenced in Preamble paragraph F(3) regarding Zyvox: $97,945,019;
>
> (4)    For the Covered Conduct referenced in Preamble paragraph F(4) regarding Lyrica: $48,223,886
>
> (5)    For the Covered Conduct referenced in Preamble paragraph F(5) regarding other specified kickbacks: $49,844,714.

15

13.     In consideration of the obligations of the Relators set forth in this Agreement,

Pfizer, on behalf of itself, its predecessors, and its current and former divisions, parents,

subsidiaries, agents, successors, assigns, and their current and former directors, officers and

employees, fully and finally release, waive, and forever discharge the Relators and their

respective heirs, successors, assigns, agents, and attorneys from any claims or allegations Pfizer

has asserted or could have asserted, arising from the Covered Conduct, except as they relate to a

statutory claim by Relators for reasonable attorneys' fees and costs pursuant to 31 U.S.C. §

3730(d) and as to any claims Relators may have under 31 U.S.C. § 3730(h).

14.     The Settlement Amount shall not be decreased as a result of the denial of claims

for payment now being withheld from payment by any Medicare carrier or intermediary or any

state payer, related to the Covered Conduct; and Pfizer agrees not to resubmit to any Medicare

carrier or intermediary or any state payer any previously denied claims related to the Covered

Conduct, and agrees not to appeal any such denials of claims.

15.     Pfizer agrees to the following:

(a)     Unallowable Costs Defined: that all costs (as defined in the Federal

Acquisition Regulations (FAR) 48 C.F.R. § 31.205-47 and in Titles XVIII and XIX of the Social

Security Act, 42 U.S.C. §§ 1395-1395ggg and 1396-1396v, and the regulations and official

program directives promulgated thereunder) incurred by or on behalf of Pfizer, its present or

former officers, directors, employees, shareholders, and agents in connection with the following

shall be "Unallowable Costs" on government contracts and under the Medicare Program,

Medicaid Program, TRICARE Program, and FEHBP:

16

(1)    the matters covered by this Agreement and the related plea agreement;

(2)    the United States' audit and civil and criminal investigation of the matters covered by this Agreement;

(3)    Pfizer's investigation, defense, and any corrective actions undertaken in response to the United States' audit and civil and criminal investigation in connection with the matters covered by this Agreement (including attorneys' fees);

(4)    the negotiation and performance of this Agreement, the plea agreement, and the Medicaid State Settlement Agreements;

(5)    the payments Pfizer makes to the United States or any State pursuant to this Agreement, the plea agreement, or the Medicaid State Settlement Agreements and any payments that Pfizer may make to Relators (including costs and attorneys' fees);

(6)    the negotiation of, and the obligations undertaken pursuant to the CIA to:

    (i)    retain an independent review organization and outside reviewer to perform annual reviews as described in Section III of the CIA; and

    (ii)    prepare and submit reports to the OIG-HHS.  However, nothing in this paragraph 15(a)(6) that may apply to the obligations undertaken pursuant to the CIA affects the status of costs that are not allowable based on any other authority applicable to Pfizer.

17

(All costs described or set forth in this paragraph 15(a) are hereafter "Unallowable Costs")

(b)     Future Treatment of Unallowable Costs:  These Unallowable Costs shall be separately determined and accounted for by Pfizer, and Pfizer shall not charge such Unallowable Costs directly or indirectly to any contracts with the United States or any State Medicaid Program, or seek payment for such Unallowable Costs through any cost report, cost statement, information statement, or payment request submitted by Pfizer or any of its subsidiaries or affiliates to the Medicare, Medicaid, TRICARE, or FEHBP Programs.

(c)     Treatment of Unallowable Costs Previously Submitted for Payment: Pfizer further agrees that within 90 days of the Effective Date of this Agreement, it shall identify to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors, and Medicaid, and FEHBP fiscal agents, any Unallowable Costs (as defined in this Paragraph) included in payments previously sought from the United States, or any State Medicaid Program, including, but not limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by Pfizer or any of its subsidiaries or affiliates, and shall request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the Unallowable Costs.  Pfizer agrees that the United States, at a minimum, shall be entitled to recoup from Pfizer any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted cost reports, information reports, cost statements, or requests for payment.

18

Any payments due after the adjustments have been made shall be paid to the United States pursuant to the direction of the Department of Justice, and/or the affected agencies. The United States reserves its rights to disagree with any calculations submitted by Pfizer or any of its subsidiaries or affiliates on the effect of inclusion of Unallowable Costs (as defined in this Paragraph) on Pfizer's or any of its subsidiaries' or affiliates' cost reports, cost statements, or information reports.

(d)     Nothing in this Agreement shall constitute a waiver of the rights of the United States to examine or reexamine Pfizer's books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this Paragraph.

16.     Pfizer agrees to cooperate fully and truthfully with the United States' investigation relating to the Covered Conduct of individuals and entities not released in this Agreement.  Upon reasonable notice, Pfizer shall encourage, and agrees not to impair, the cooperation of its directors, officers, and employees, and shall use its best efforts to make available, and encourage the cooperation of former directors, officers, and employees for interviews and testimony, consistent with the rights and privileges of such individuals.  Pfizer agrees to furnish to the United States, upon request, complete and unredacted copies of all non-privileged documents and records in its possession, custody, or control concerning any investigation of the Covered Conduct that it has undertaken, or that has been performed by its counsel or other agent.

19

17.    This Agreement is intended to be for the benefit of the Parties only.  The Parties do not release any claims against any other person or entity, except to the extent provided for in Paragraph 18 below (waiver for beneficiaries paragraph).

18.    Pfizer agrees that it waives and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third party payors based upon the claims defined as Covered Conduct.

19.    Pfizer expressly warrants that it has reviewed its financial situation and that it is currently solvent within the meaning of 11 U.S.C. §§ 547(b)(3) and 548(a)(1)(B)(ii)(I), and will remain solvent following payment of the Settlement Amount.  Further, the Parties warrant that, in evaluating whether to execute this Agreement, they (a) have intended that the mutual promises, covenants and obligations set forth herein constitute a contemporaneous exchange for new value given to Pfizer, within the meaning of 11 U.S.C. § 547(c)(1); and (b) conclude that these mutual promises, covenants and obligations do, in fact, constitute such a contemporaneous exchange.  Further, the Parties warrant that the mutual promises, covenants, and obligations set forth herein are intended to and do, in fact, represent a reasonably equivalent exchange of value that is not intended to hinder, delay, or defraud any entity to which Pfizer was or became indebted to on or after the date of this transfer, within the meaning of 11 U.S.C. § 548(a)(1).

20.    On the Effective Date of this Agreement or any date thereafter:

20

(a)     The United States shall intervene in the Civil Actions as to the Covered Conduct and decline or consent to the voluntary dismissal as to all other defendants and all other allegations set forth in the Civil Actions.

(b)     Following payment of the Settlement Amount, the Parties shall file a stipulation of dismissal in each of the Civil Actions as follows:

(1)     each stipulation of dismissal shall be with prejudice as to the United States' and Relators' claims as to Pfizer as to the Covered Conduct in each Civil Action pursuant to and consistent with the terms and conditions of this Agreement;

(2)     each stipulation of dismissal shall be without prejudice as to the United States and with prejudice as to Relators as to all other entities and individuals and as to all other claims, or without prejudice to Relators if agreed to by Relators and Pfizer in any separate written agreement(s) entered into by Relators and Pfizer;

(3)     provided, however, that the following claims against Pfizer shall not be dismissed, unless they are settled, adjudicated, or otherwise resolved, and any required consent by the United States is obtained, and the Court is so informed: (a) all claims against Pfizer reserved by any Relator for claims not resolved herein, including for allegations in their Civil Actions that are not within the Covered Conduct; (b) Relators' claims for reasonable attorneys' fees, expenses, and costs pursuant to 31 U.S.C. § 3730(d); (c) Relators' claims under § 3730(h); (d) Relators' claims for a Relator's Share under the Medicaid State Settlement Agreements; and (e) any other claims Relators may have or had against Pfizer that are not expressly resolved herein.

21

21.    Except as provided in Paragraph 20, each party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement, except Relators reserve their rights against Pfizer to seek attorneys' fees, costs and expenses under § 3730(d).

22.    The Parties each represent that this Agreement is freely and voluntarily entered into without any degree of duress or compulsion whatsoever.

23.    This Agreement is governed by the laws of the United States.  The Parties agree that the exclusive jurisdiction and venue for any dispute arising between and among the Parties under this Agreement, including any dispute regarding payment of Relator's attorneys' fees, expenses and costs, shall be the district court in which the Civil Action was pending on the Effective Date of this Agreement, except as otherwise agreed by the parties to the dispute, and except that any disputes arising under the CIA shall be resolved exclusively through the dispute resolution provisions set forth in the CIA.

24.    For purposes of construction, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any party for that reason in any dispute.

25.    This Agreement constitutes the complete agreement between the Parties with respect to the issues covered by the Agreement.  This Agreement may not be amended except by written consent of all the Parties.

26.    The individuals signing this Agreement on behalf of Pfizer represent and warrant that they are authorized by Pfizer to execute this Agreement.  The individuals signing this

22

Agreement on behalf of each Relator represent and warrant that they are authorized by that Relator to execute this Agreement. The United States' signatories represent that they are signing this Agreement in their official capacities and they are authorized to execute this Agreement.

27.     This Agreement may be executed in counterparts, each of which constitutes an original and all of which shall constitute one and the same Agreement.

28.     This Agreement is binding on Pfizer's successors, transferees, heirs and assigns.

29.     This Agreement is binding on Relators' successors, transferees, heirs, attorneys and assigns.

30.     All parties consent to the disclosure of this Agreement, and information about this Agreement, to the public after it has been finally executed.

31.     This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement). Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

## UNITED STATES OF AMERICA

MICHAEL K. LOUCKS
Acting United States Attorney

By                                                    Dated: 8/31/09
SARA MIRON BLOOM
SUSAN M. POSWISTILO
ZACHARY A. CUNHA
Assistant United States Attorneys
District of Massachusetts

24

By:                                                      Dated: 8/28/08

MICHAEL L. LEVY
United States Attorney
United States Attorney's Office
Eastern District of Pennsylvania


By:                                                      Dated: 8/28/08

MARGARET L. HUTCHINSON
Chief, Civil Division
United States Attorney's Office
Eastern District of Pennsylvania


By:                                                      Dated: 8/28/08

MARILYN MAY
Assistant U.S. Attorney
United States Attorney's Office
Eastern District of Pennsylvania


By:                                                      Dated: 8/28/08

CHARLENE KELLER FULLMER
Assistant U.S. Attorney
United States Attorney's Office
Eastern District of Pennsylvania


25

JAMES A. ZERHUSEN
United States Attorney

By:    *Robin Gwinn*           Dated:  8/28/09

ROBIN GWINN
CHERYL MORGAN
Assistant United States Attorneys
Eastern District of Kentucky

26

TONY WEST
Assistant Attorney General

By: _____        Dated: ___8/31/2009___

JOYCE R. BRANDA
Director
JAMIE ANN YAVELBERG
SANJAY BHAMBHANI
PATRICIA L. HANOWER
COLIN M. HUNTLEY
Trial Attorneys
Civil Division
United States Department of Justice

By: _____     Dated: _8/31/09_____

GREGORY E. DEMSKE
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General
Office of Inspector General
U.S. Department of Health and Human Services

28

Civil Settlement – Pfizer

By: _____ (Acting Deputy General Counsel) Dated: _28. Aug 2009_
For   LAUREL C. GILLESPIE
      Deputy General Counsel
      TRICARE Management Activity
      United States Department of Defense

29

By: _____     Dated: 8/31/09

LORRAINE E. DETTMAN
Assistant Director
for Insurance Services Programs
Center for Retirement & Insurance Services
United States Office of Personnel Management

By: _____     Dated: 8/31/09

J. DAVID COPE
Assistant Inspector General for Legal Affairs
United States Office of Personnel Management

30

**PFIZER INC**

By: _____        Dated: _31 August 2009_

[Its Officer]
Pfizer Inc

By: _____        Dated: _8/31/09_

BRIEN O'CONNOR
JOSHUA LEVY
Ropes & Gray LLP
Counsel to Pfizer Inc and Pharmacia & Upjohn Company, Inc.

31

RELATOR JOHN KOPCHINSKI

By: _____        Dated: _____

JOHN KOPCHINSKI

By: _____        Dated: _____

ERIKA KELTON
Phillips & Cohen LLP
Counsel to Relator John Kopchinski

32

**RELATOR DANA SPENCER**

By:  _Dana T. Spencer_          Dated: _Aug 28, 2009_
DANA SPENCER

By:  _William V. Hoyle_          Dated: _Aug. 28, 2009_
WILLIAM V. HOYLE, Jr.
The Law Offices of William V. Hoyle, Jr., PC
Counsel to Relator Dana Spencer

33

**RELATOR BLAIR COLLINS**

By:  *Blair M Collins*                    Dated:  8/28/2009
     BLAIR COLLINS

     *Suzanne E. Durrell /RMT*
By:  *Robert M Thomas L.*                 Dated:  8/28/09
     SUZANNE E. DURRELL
     Durrell Law Office
     ROBERT M. THOMAS, JR
     ROYSTON H. DELANEY.
     Thomas & Associates
     Counsel to Relator Blair Collins

34

08/28/2009  15:20    614--326-6060         FEDEX OFFICE    0148            PAGE  02

**RELATOR GLENN DEMOTT**

By: _____        Dated: _08/28/2009_
      GLENN DEMOTT

By: _____        Dated: _____
      ANN LUGBILL
      Murphy Anderson PLLC
      Counsel to Relator Glenn DeMott

By: _____        Dated: _____
      JOHN C. KAIRIS
      Grant & Eisenhofer, PA
      Counsel to Relator Glenn DeMott

By: _____        Dated: _____
      REUBEN GUTTMAN
      Grant & Eisenhofer, PA
      Counsel to Relator Glenn DeMott

35

**RELATOR GLENN DEMOTT**

By: _____     Dated:_____
    GLENN DEMOTT

By: _Ann Lughill (MY)_     Dated: _8/28/09_
    ANN LUGBILL
    Murphy Anderson PLLC
    Counsel to Relator Glenn DeMott

By: _____     Dated:_____
    JOHN C. KAIRIS
    Grant & Eisenhofer, PA
    Counsel to Relator Glenn DeMott

By: _____     Dated:_____
    REUBEN GUTTMAN
    Grant & Eisenhofer, PA
    Counsel to Relator Glenn DeMott

35

**RELATOR GLENN DEMOTT**

By: _____     Dated:_____
     GLENN DEMOTT


By: _____     Dated:_____
     ANN LUGBILL
     Murphy Anderson PLLC
     Counsel to Relator Glenn DeMott


By: *John C KAIRIS CAJ)*                 Dated:  *8/28/2008*
     JOHN C. KAIRIS
     Grant & Eisenhofer, PA
     Counsel to Relator Glenn DeMott


By: *Reuben Guttman*                     Dated:   *8/28/008*
     REUBEN GUTTMAN
     Grant & Eisenhofer, PA
     Counsel to Relator Glenn DeMott

35

**RELATOR ROBERT LITER**

By: _[signature]_                               Dated: _8/28/09_

ROBERT LITER


By: _[signature]_                               Dated: _Aug. 28th, 2009_

BARBARA BONAR
The Law Offices of B. Dahlenburg Bonar
Counsel to Relator Robert Liter

36

**RELATOR CASEY SCHILDHAUER**

By: _____        Dated:_____
     CASEY SCHILDHAUER

**RELATOR DAVID FARBER**

By: _____        Dated:_____
     DAVID FARBER

By: _____        Dated: 8/28/2009
     W. SCOTT SIMMER
     Blank Rome LLP
     Counsel to Relators Casey Schildhauer and David Farber

37

**RELATOR CASEY SCHILDHAUER**

By: _____          Dated: _____
      CASEY SCHILDHAUER

**RELATOR DAVID FARBER**

By: _____          Dated: 8/28/2009
      DAVID FARBER

By: _____          Dated: _____
      W. SCOTT SIMMER
      Blank Rome LLP
      Counsel to Relators Casey Schildhauer and David Farber

37

**RELATOR CASEY SCHILDHAUER**

By: _____         Dated: _8/28/2009_
    CASEY SCHILDHAUER


**RELATOR DAVID FARBER**

By: _____         Dated: _____
    DAVID FARBER


By: _____         Dated: _____
    W. SCOTT SIMMER
    Blank Rome LLP
    Counsel to Relators Casey Schildhauer and David Farber

37

RELATOR STEFAN KRUSZEWSKI

By: _____        Dated: ___8/31/2009___

STEFAN KRUSZEWSKI

By: _____        Dated: ___8/31/2009___

BRIAN KENNEY
M. TAVY DEMING
Kenney Egan McCafferty & Young
Counsel to Relator Stefan Kruszewski

38

**RELATOR MARK WESTLOCK**

By:  _____        Dated: _____
     MARK WESTLOCK

By:  _____        Dated:  8/28/2009
     W. SCOTT SIMMER
     Blank Rome LLP
     Counsel to Relator Mark Westlock

39

**RELATOR MARK WESTLOCK**

By: _____     Dated: 8/20/09

MARK WESTLOCK

By: _____     Dated: _____

W. SCOTT SIMMER
Blank Rome LLP
Counsel to Relator Mark Westlock

39

**RELATOR RONALD RAINERO**

By: _____     Dated: ___8/28/09___
RONALD RANEIRO


By: _____     Dated: _____
**JAMES PEPPER**
**Sheller, PC**
**Counsel to Relator Ronald Rainero**

40

**RELATOR RONALD RAINERO**

By: _____          Dated: _____
        RONALD RANEIRO

By: _____          Dated: ___8/28/09___
        JAMES PEPPER
        Sheller, PC
        Counsel to Relator Ronald Rainero

40

ATTACHMENT A

This statement reflects facts as to which Pfizer and the United States agree are true and accurate. It does not contain all of the United States' factually-based contentions regarding Pfizer's marketing of Zyvox, nor does it contain all of Pfizer's responses to those allegations:

1.    Zyvox (linezolid) is an antibacterial agent that is approved by the FDA to treat certain types of infections including, among other approved indications, nosocomial pneumonia caused by methicillin-resistant *Staphylococcus aureus* ("MRSA") and complicated skin and skin structure infections ("CSSSIs") due to MRSA.

2.    Although Zyvox is approved to treat these indications, it has not been demonstrated by substantial evidence to be superior to the primary competitor drug for those indications: vancomycin, an antibiotic that has been on the market for nearly fifty years.

3.    On July 20, 2005, the FDA sent Pfizer a Warning Letter ("Warning Letter") regarding a journal advertisement for Zyvox. In this Warning Letter, the FDA stated that Pfizer's advertisement misbranded Zyvox by making misleading and unsubstantiated implied superiority claims, claims that broadened the indications of Zyvox, and omitted important safety information.

4.    The FDA stated in the Warning Letter that the journal advertisement implied that Zyvox is superior to vancomycin for the treatment of nosocomial pneumonia caused by MRSA. Specifically, the FDA Warning Letter objected to the advertisement's use of certain retrospective analyses of head-to-head clinical trials of linezolid and vancomycin. The FDA stated that these analyses were not prospectively designed or sufficiently powered to demonstrate statistically significant differences in treatment groups. Thus, the FDA stated that the superiority of Zyvox for the treatment of nosocomial pneumonia caused by MRSA had not been demonstrated by substantial evidence and that the advertisement was therefore misleading.

5.    The FDA stated that Pfizer's advertisement misbranded Zyvox in violation of 21 U.S.C. 352(n) & 321(n) and FDA implementing regulations and requested that Pfizer cease dissemination of the journal advertisement and other promotional materials containing similar statements.

6.    After receiving the Warning Letter, Pfizer responded to the FDA, taking the position that it did not believe that the journal advertisement made an improper superiority claim. However, Pfizer informed the FDA that, in response to the FDA's concerns, Pfizer would cease use of the journal advertisement in question. Further, Pfizer informed the FDA that all other Zyvox promotional materials had been reviewed to identify other items that could raise similar concerns, and that steps had been taken to discontinue or appropriately revise any promotional materials that could potentially be misinterpreted in a similar manner. Pfizer also

1

informed the FDA that it was instructing its sales force that materials containing information that the FDA stated constituted an implied superiority claim could no longer be used. Pfizer also advised its sales force to discontinue using certain identified promotional materials and that sales representatives would be provided with replacement pieces.

7.   In addition, at the FDA's request, Pfizer agreed to publish a corrective advertisement in February 2006, which was entitled "IMPORTANT CORRECTION OF DRUG INFORMATION ZYVOX." In this corrective advertisement, Pfizer noted that the FDA had objected to the presentation, in its previous advertisement, of clinical data that showed a more favorable comparison of Zyvox to vancomycin than was shown in the data included in the the Zyvox label, which states that 57% of Zyvox patients and 60% of vancomycin patients in the clinically evaluable population were cured of MRSA. Further, the label reflects that 59% (13/22) of Zyvox patients and 70% (7/10) of vancomycin patients with microbiologically-confirmed MRSA at baseline were clinically cured.

8.   Despite notifying its sales force that it should cease using promotional materials that raised concerns of the type identified in the FDA Warning Letter, Pfizer did not provide adequate guidance to its sales force regarding what statements were permissible concerning data from head-to-head trials and retrospective analyses and what promotional statements were not permitted.

9.   As a result, Pfizer's sales personnel thereafter continued to make claims to physicians that Zyvox was superior to vancomycin for certain patients with MRSA, which included the claim that Zyvox would have a higher cure rate, and would save more lives, despite the fact that these claims were inconsistent with the FDA's Warning Letter and Zyvox's FDA approved label, and which were inconsistent with the manner in which Pfizer, after the receipt of the Warning Letter, agreed to present the clinical data cited by the FDA.

10.  Moreover, certain Pfizer sales managers, including a regional manager and a headquarters-based vice president, were aware of and, in certain cases, encouraged a sales message that Zyvox was superior to vancomycin for certain patients, despite their knowledge of the FDA Warning Letter and the issues it raised.

2



**U.S. Department of Justice**

Criminal Division

_____

*Office of the Assistant Attorney General*                    *Washington, D.C. 20530*

JUL 28 2009

The Honorable Michael K. Loucks
Acting United States Attorney
District of Massachusetts
Boston, Massachusetts 02210

> Attention:     Susan Winkler
>                Assistant United States Attorney

> Re:     Global Non-prosecution Agreement for Pfizer Inc

Dear Mr. Loucks:

This is in response to your request for authorization to enter into a global case disposition agreement with the business entity known as Pfizer Inc.

I hereby approve the terms of the Side Letter Agreement, including Paragraphs 1 and 3, in which the United States Attorney's Offices and, with the exception of the Fraud Section, the Criminal Division of the Department of Justice agree not to initiate further criminal prosecutions as set out therein.

You are authorized to make this approval a matter of record in this proceeding.

Sincerely,

John C. Keeney
Deputy Assistant Attorney General

EXHIBIT 3