```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS



 UNITED STATES OF AMERICA            )
                                     )
                                     )
                                     )
 vs.                                 ) No. 1:09-cr-10258
                                     )
                                     )
 PHARMACIA & UPJOHN COMPANY,         )
 INC.,                               )
                                     )
                     Defendant.      )
                                     )



 BEFORE:   THE HONORABLE DOUGLAS P. WOODLOCK


                      SENTENCING HEARING




        John Joseph Moakley United States Courthouse
                    Courtroom No. 1
                   One Courthouse Way
                    Boston, MA 02210
                 Friday, October 16, 2009
                       2:30 p.m.




              Brenda K. Hancock, RMR, CRR
                 Official Court Reporter
        John Joseph Moakley United States Courthouse
                   One Courthouse Way
                    Boston, MA 02210
                     (617)439-3214
```

```
 1
 2    APPEARANCES:
 3
      ON BEHALF OF THE UNITED STATES OF AMERICA:
 4
      UNITED STATES ATTORNEY'S OFFICE
 5    By:  Sara M. Bloom, AUSA
           Susan M. Poswistilo, AUSA
 6    1 Courthouse Way
      Suite 9200
 7    Boston , MA 02210
      617-748-3265
 8
      UNITED STATES DEPARTMENT OF JUSTICE - CONSUMER LITIGATION
 9    By:  Jill P. Furman, Esq.
      P.O. Box 386
10    Washington, DC 20044
      202-307-0090
11

12    ON BEHALF OF THE DEFENDANTS:

13    ROPES & GRAY LLP (BOS)
      By:  Brien T. O'Connor, Esq.
14         Brian R. Blais, Esq.
           Joshua S. Levy, Esq.
15    One International Place
      Boston , MA 02110
16    617-951-7385

17
      PFIZER, INC.
18    By:  Gary F. Giampetruzzi, Esq.
      150 East 2nd Street
19    New York, NY 10017
      212-733-8471
20

21    ALSO PRESENT:

22    James Gibney
      Pharmacia representative
23

24

25
```

1           (The following proceedings were held in open court
2  before the Honorable Douglas P. Woodlock, United States
3  District Judge, United States District Court, District of
4  Massachusetts, at the John J. Moakley United States Courthouse,
5  One Courthouse Way, Courtroom 1, Boston, Massachusetts, on
6  Friday, October 16, 2009):
7           THE CLERK:  All rise.
8  (The Honorable Court entered the courtroom at 2:30 p.m.)
9           THE CLERK:  This Honorable Court is now in session.
10 You may be seated.
11          This is the matter of <u>United States versus Pharmacia &</u>
12 <u>Upjohn Company, Inc.</u>, Criminal Action 09-10258.
13          THE COURT:  Well, since our last hearing, I have
14 received the Corporate Integrity Agreement filed by the
15 government, a Sentencing Memorandum from the government, a
16 response to the government's Sentencing Memorandum by Pharmacia
17 & Upjohn and a motion for order of forfeiture.
18          Are there any other documents I should have?
19          MS. BLOOM:  I don't believe so, your Honor.
20          THE COURT:  Okay.  With respect to the notice that was
21 provided to I guess purchasers/consumers here, was there any
22 response?
23          MS. BLOOM:  Your Honor, we were called by two persons
24 who believed they might be victims.  It turned out they had not
25 taken Bextra, they had taken other Pfizer drugs.  We referred

1    them to the counsel in the litigation.  But we did not receive
2    any other queries or requests to be heard.
3            THE COURT:  All right.  Now, one just specific but
4    modest concern.  Your Exhibit 8 to the Sentencing Memorandum
5    redacts a memorandum that is included or redacts something; I
6    guess the "From" and "To."
7            MS. BLOOM:  Yes, your Honor.
8            THE COURT:  Why?
9            MS. BLOOM:  Well, consistent with the policy of our
10   office not to in informations and indictments name individuals
11   other than those being indicted and to try to avoid naming
12   particular individuals.  When we get to trial, of course we
13   usually do put in exhibits that have individual names.  But,
14   given that we are giving such a selected, so few documents, we
15   thought it was more consistent with the policy not to isolate a
16   few people as if they were the ones responsible, when these
17   were only a sample of documents.
18           THE COURT:  All right.  Well, I understand the theory.
19   Do you want to be heard any more about the question of
20   no individuals being indicted?
21           MS. BLOOM:  No, your Honor.  There are no outstanding
22   target letters.
23           THE COURT:  That is still the case?
24           MS. BLOOM:  That is still the case.
25           THE COURT:  Do you want to be heard any further?

1           MS. BLOOM:  No, your Honor.
2           THE COURT:  Mr. O'Connor, do you want to be heard any
3    further?
4           MR. O'CONNOR.  No, your Honor.  Just briefly, again,
5    your Honor, that Pharmacia does accept full responsibility for
6    its misbranding offense.
7           Your Honor, Pfizer's -- excuse me -- Pharmacia's
8    ultimate parent, Pfizer, today is a new company.
9           Oh, I'm sorry.  There was an announcement of the
10   merger today at 2:00 a.m. today, but I just wanted to say, your
11   Honor --
12          THE COURT:  Is this the Wyeth --
13          MR. O'CONNOR:  The Wyeth acquisition.  The main thing
14   we want to say to the Court is the company and its leadership
15   is 100 percent committed to compliance going forward, and it
16   really has done -- as we set forth briefly in the sentencing
17   memo, it has undertaken some very significant, we think, steps
18   with respect to compliance enhancements and new controls even
19   before but then very much as part of the Corporate Integrity
20   Agreement with --
21          THE COURT:  Does the Corporate Integrity Agreement
22   extend to Wyeth too now as of 2:00 a.m?
23          MR. O'CONNOR:  Yes, it does.  Now it does.  It does,
24   your Honor.
25          So, our position is, we would ask the Court to accept

1    the joint recommendation, and the company is looking ahead and
2    working as hard as it can at avoiding any problems such as
3    those that underlie the plea here on the Bextra case.
4         THE COURT:  All right.  Thank you.
5         Well, I have reviewed the materials here intensively.
6    I am satisfied that I will accept the agreed-upon plea.
7         There were two principal matters that were of concern
8    to me.  One was the lack of traditional probationary sentence.
9    That has been satisfied by the Corporate Integrity Agreement,
10   which seems to me to be a more intelligent way of dealing with
11   ongoing -- or "going forward," I guess, is the term of art that
12   is used -- kind of activity on the part of the several
13   corporations which continue even into the early morning hours
14   of today to morph into new organizations.
15        But there is a substantial history here that cannot be
16   ignored, and I recognize that the sentence is, according to the
17   government, the largest criminal fine ever imposed.
18        But I am concerned about the individuals.  This is a
19   case in which no human being, apparently, is going to be held
20   responsible for substantial criminal activity by a corporation.
21   I have invoked before, and some of the other judges of this
22   court have invoked before, the observation of the 19th Century
23   British judge, that "The problem with sentencing a corporation
24   is that it has no soul to damn nor body to kick."  That is
25   ordinarily not within the sentencing guidelines, that is,

1    kicking or damning, but in the sentencing guidelines is a
2    recognition of real criminal culpability; and there is no,
3    apparently, human being who did anything wrong here or at least
4    the government is prepared to pursue.
5         Now, I understand why, as a matter of prudence and use
6    of resources, the government may not wish to pursue cases which
7    present very substantial challenges, particularly in the proof
8    of intent by someone who simply is doing a job in a
9    corporation.  And I also recognize the very high likelihood of
10   jury nullification when confronted with individuals who seem to
11   be just working doing a job and not engaging in some sort of
12   flagrant activity.
13        Nevertheless, suffusing the materials that I have been
14   provided with is a lengthy pattern by persons, who may or may
15   not still be with the corporation in its new incarnation, that
16   are instinct with violations for which the corporation is
17   pleading guilty.  It seems to me that those are things, even if
18   they are not winners from the government's point of view, which
19   bear prosecution.
20        It has, I think, become something of cost of doing
21   business, a very high cost of doing business, for some of these
22   corporations to shed their skin like certain animals and leave
23   the skin behind and move on to the future without ultimately
24   giving the public what it is entitled to, which is the
25   satisfaction of knowing that there has been full evaluation of

1   the criminal responsibility of the individuals who occupied
2   that skin.
3       Those are reservations of mine that do not affect
4   ultimately my choice to accept this plea agreement, which seems
5   to me to be a fair and reasonable one, to, as I have indicated,
6   provide substantial punishment and a certain degree of
7   corporate condemnation.  Although, one could look at the price
8   of the stock on the day in which it was announced and assume
9   that it really did not count for much, at least for investors,
10  or maybe it was discounted earlier.
11      In any event, there is here a substantial amount of
12  condemnation, an appropriate sentence, which I should add I
13  think was very carefully calculated and in a principled fashion
14  by the parties, not just how much money do we have to throw at
15  this to make it go away but reflecting the precise -- I should
16  not say precise -- but plausibly reflecting the kind of
17  activity that was involved here and sanctioning it in
18  accordance with the guidelines.  And there is always hope for
19  the future but here even more hope for the future provided by
20  the Corporate Integrity Agreement.
21      And I simply note my anxious concerns that this seemed
22  to have been untouched by human hands, the criminal activity.
23  And consequently it gives a sense that corporations really do
24  have separate souls and bodies, when they do not; they are
25  aggregations of human beings to make money.  That there is a

1   sense of incompleteness, which I recognize poses severe
2   problems for the government in terms of resource allocation and
3   evaluation of the likelihood of being successful in a criminal
4   prosecution, but, nevertheless, a sense of incompleteness in
5   this.
6          Nevertheless, for those reasons, I will accept the
7   plea, and Mr. Lovett will enter a judgment accordingly.  I
8   will, in addition, execute the motion for Order of Forfeiture
9   in this case.
10         Is there anything further that we need to take up?
11         MR. O'CONNOR:  No, your Honor.
12         MS. BLOOM:  No, your Honor.
13         THE COURT:  All right.  Thank you very much.  We will
14  be in recess.
15  (WHEREUPON, the proceedings adjourned at 2:45 p.m.)

C E R T I F I C A T E

I, Brenda K. Hancock, RMR, CRR and Official Reporter of the United States District Court, do hereby certify that the foregoing transcript constitutes, to the best of my skill and ability, a true and accurate transcription of my stenotype notes taken in the matter of United States v Pharmacia & Upjohn Company, Inc., No. 09-cr-10258.

Date: October 19, 2009        /s/ *Brenda K. Hancock*

Brenda K. Hancock, RMR, CRR

Official Court Reporter